The CITY OF HOUSTON,
Texas, Appellant

v.

Roger BATES, Michael L. Spratt, and
Douglas Springer, Appellees.

No. 14–10–00542–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 16, 2011.

Reagan Douglas Pratt, Donald J. Fleming, Houston, Timothy J. Higley, David M. Feldman, Houston, for City of Houston.

E. Troy Blakeney, Paul Webb, Richard Charles Mumey, Vincent L. Marable III, Wharton, for Roger Bates, Michael L. Spratt and Douglas Springer.

Panel consists of Justices ANDERSON, SEYMORE, and McCALLY.

## MEMORANDUM OPINION

JOHN S. ANDERSON, Justice.

The City of Houston, appellant, appeals from a judgment entered in favor of appellees, Roger Bates, Michael L. Spratt, and Douglas Springer, following a bench trial. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The key facts of this case are undisputed. Houston is a home-rule municipality of the State of Texas. Appellees are retired fire fighters who spent their careers working for the Houston Fire Department ("HFD"). Bates joined HFD in 1969 and worked there for 35 years, attaining the rank of captain. Bates retired in March of 2005. Spratt joined HFD in November 1971 and worked there until he retired in February of 2004. Springer joined HFD in January 1976 and worked there until he retired on January 8, 2004. Each of the appellees testified that if they were scheduled to work by HFD, they either reported for work or were on approved leave. Each appellee also testified that, during their entire careers with HFD, they were never AWOL, or absent without leave. Also, Chris Conneally, the HFD fire chief during the relevant time period, testified fire fighters could use their benefit time, such as vacation and sick leave, to miss a debit day and if they did so, they were on approved leave.

Following their retirements, appellees filed suit against Houston asserting two different claims relating to Houston's han-

dling of their final payments upon retirement: (1) the Debit Dock or Overtime claim; and (2) the Termination Pay claim.

## I. The Debit Dock or Overtime Claim

Due to the nature of the work performed by fire fighters, state and federal law recognize a work schedule for fire fighters different from the traditional 40-hour work week. Instead of a 40-hour work week, fire fighters with HFD are scheduled for work over a 72-day work cycle. If a fire fighter works more than 46.7 hours on a weekly average over that 72-day cycle, they are entitled to overtime pay for the overage. Prior to November 2001, HFD scheduled firefighters to work twenty 24-hour days out of each 72-day work cycle. These twenty days included so-called "debit days" to ensure each fire fighter reached the 46.7 hours per week average.[1] By adhering to this schedule, each fire fighter worked an average of 46.7 hours per week and was therefore not entitled to overtime pay.

On November 8, 2001, HFD, due to staffing shortages considered more severe in the wake of the 9/11 terrorist attacks, changed the work schedule for its fire fighters by adding another 24-hour workday each 72-day work cycle. By making this change, each fire fighter worked 21 days, which raised the average of hours worked per week to 49. By changing the work schedule in this manner, HFD created a work schedule where each fire fighter was scheduled to work 2.3 hours of overtime each week for a total of 24 overtime hours each 72-day work cycle.

In an effort to boost attendance on "debit days," the new work schedule split the 24 overtime hours into three 8-hour shifts at the end of the three "debit days" contained in each 72-day cycle. Under HFD policy, Houston would only pay overtime rates for those 8-hour shifts if the fire fighter was actually present for work. Therefore, under the new system, if the fire fighter actually worked his full "debit day," he was paid sixteen hours of regular pay and eight hours of overtime pay. If the fire fighter did not work the "debit day" because he was on approved leave, he was—paid for sixteen hours at his regular pay rate and did not receive any overtime.[2] This schedule remained in effect until November 18, 2003.

Fire fighters accumulate vacation time, sick leave, and holiday time while employed by HFD. Frequently, fire fighters are unable to use accumulated holiday time due to the demands of the job schedule. To address that problem, Houston developed the practice of allowing a fire fighter to "ride out" his employment to retirement using his accumulated holiday time. Under this longstanding policy, the retiring fire fighter would be paid for all of his accumulated holiday time despite the existence of a Houston ordinance limiting a fire fighter to receiving payment for only eleven accumulated holidays upon retirement. Springer was one of the fire fighters allowed to "ride out" his employment

1. HFD assigns each firefighter to one of four shifts: A, B, C, or D. HFD inserted "debit days" into each 72-day work cycle as a scheduling mechanism to ensure each fire fighter worked an average of 46.7 hours per week. On "debit days" fire fighters were normally assigned to work on a different shift or at a different fire station from their normal assignment. As a result, "debit days" were unpopular and there was a high rate of absenteeism.

Even though fire fighters worked different assignments on their "debit days," it was considered just another day in a fire fighter's regularly scheduled work shift.

2. In addition, the absent fire fighter's leave account was only debited for the sixteen hours of regular time he missed on the "debit day."

with HFD using his accumulated holiday time. To "ride out" his employment, Springer was scheduled to work, but was placed on authorized leave from July 2, 2003 until his official retirement in January 2004. Four "debit days" for Springer's shift occurred during that period of time.

Spratt was on approved vacation on October 27, 2002. This happened to be a "debit day" for Spratt's shift.

Even though the new schedule started in November of 2001 and HFD informed the fire fighters they would not be paid overtime if they were not physically present for work on the "debit days," the fire fighters' paychecks initially did not reflect this policy. Instead, HFD paid fire fighters, including Spratt and Springer, for overtime hours, even on the "debit days" they were scheduled to work but did not. When Spratt and Springer retired, HFD, asserting it had paid them overtime by mistake, deducted the overtime payments from their final termination paychecks.

As already mentioned, following their retirement, Spratt and Springer filed suit against Houston seeking recovery of the deducted overtime pay. According to Spratt and Springer, statutes found in the Texas Local Government Code require Houston to include all hours they either worked or were scheduled to work but were absent because they were on approved leave, in the calculation determining whether they were entitled to overtime pay.[3]

## II. The Termination Pay Claim

A fire fighter's compensation is governed by both Houston City Ordinances and the Texas Local Government Code.

Section 143.110(a) of the Local Government Code provides that all fire fighters in the same classification are entitled to the same base salary. Tex. Loc. Gov't Code Ann. § 143.110(a) (West 2008). The Local Government Code also provides that, in addition to base salary, a fire fighter "is entitled to each of the following types of pay, if applicable: (1) longevity pay; (2) seniority pay; (3) educational incentive pay ...; (4) assignment pay ...; and (5) shift differential pay...." *Id.* at § 143.110(b). Houston chose to authorize educational incentive and assignment pay for fire fighters. So, during all times relevant to this appeal, a Houston fire fighter's salary included base pay, longevity pay, educational incentive pay, and assignment pay. As Assistant Chief Trevino testified, it was a simple process to determine a fire fighter's salary. All one has to do is take the fire fighter's base pay, add longevity pay, and any premium pay that fire fighter has earned, such as educational and certification pay, and that total equals that particular fire fighter's salary.

Fire fighters accumulate sick leave and vacation leave during their careers with HFD. If a fire fighter takes a periodic sick day or a vacation day while on active service, that fire fighter is paid his full salary, which includes base pay, longevity pay, educational incentive pay, and assignment pay. When a fire fighter retires, the Local Government Code requires that fire fighter be paid a lump sum termination payment for any sick leave or vacation days that were accrued but not taken. *See id.* at §§ 143.115, 143.116 (providing that a retiring fire fighter is entitled to a lump sum payment of the full amount of his salary for sixty days' accumulated vacation leave and all accumulated sick leave).

---

**3.** As might be gathered from this rendition of the facts, the dollar amounts at issue in the Debit Dock or Overtime claims are minimal.

Spratt ultimately recovered $152.20 and Springer recovered $610.15.

When each appellee retired, Houston calculated the lump sum amount owed to that fire fighter using only his base pay and longevity pay. Therefore, the lump sum payments made to appellees excluded any premium pay, such as educational incentive pay and assignment pay, they had earned.

Following their retirement, all three appellees filed suit asserting Houston should have calculated each appellee's lump sum retirement payment using the fire fighter's base pay, longevity pay, and respectively earned premium pay.

## III. The Bench Trial

As previously mentioned the dispute went to trial before the court without a jury on August 18 and 19, 2009. The evidence was undisputed and the parties agreed on the amounts owed if the trial court determined the legal issues in favor of appellees. The trial court found in favor of appellees and entered judgment accordingly. The judgment awarded Bates $1,921.64 for unpaid accrued and unused sick and vacation leave. The judgment awarded Spratt a total recovery of $2,898.92, which included $152.20 to reimburse him for previously paid overtime deducted from his termination paycheck and $2,746.72 for accrued and unused sick and vacation leave. Finally, the judgment awarded Springer a total recovery of $1,818.28, which included $610.15 to reimburse him for previously paid overtime deducted from his termination paycheck and $1,818.28 for accrued and unused sick and vacation leave. The trial court also entered findings of fact and conclusions of law. This appeal followed.

### DISCUSSION

Houston asserts seven issues on appeal which we consolidate into two: (1) the trial court erred in awarding Spratt and Springer the previously paid overtime Houston deducted from their termination paychecks; and (2) the trial court erred in concluding Houston was required to calculate the amount owed to each appellee for their accrued and unused sick and vacation leave using appellees' full salary.

## I. The Standard of Review

We begin by emphasizing there are no disputed facts in this case. On appeal, Houston attacks the trial court's application of the law to those undisputed facts. We review the trial court's conclusions of law de novo. *Smith v. Smith*, 22 S.W.3d 140, 143–44 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Under de novo review, the reviewing court exercises its own judgment and re-determines each legal issue. We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002).

It is well settled that statutory construction presents a question of law subject to de novo review. *Texas Department of Transportation v. Needham*, 82 S.W.3d 314, 318 (Tex.2002). Resolution of a statutory construction issue must begin with an analysis of the statute itself. *Fitzgerald v. Advanced Spine Fixation Systems, Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999); *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983). We must interpret the statute in a manner that gives effect to the plain meaning of the statute's words and effectuates the legislature's intent. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002). We should read every word, phrase, and expression as if it were deliberately chosen, and presume words excluded from the statute were excluded purposefully. *Ward County Irrigation District No. 1 v. Red Bluff Water Power Control Dist.*, 170 S.W.3d 696, 700 (Tex.

App.-El Paso 2005, no pet.). Where the language of the statute is clear and unambiguous, it should be given its common everyday meaning, without resort to rules of statutory construction or extrinsic aids. *Cail*, 660 S.W.2d at 815; *see Klein v. Hernandez*, 315 S.W.3d 1, 9 (Tex.2010) (Willett, J. concurring) ("Faced with unequivocal language, 'the judge's inquiry is at an end.' Today's holding is firmly rooted in the statutory text ... and our analysis should end there; definitive ought to be determinative. Mining legislative minutiae to divine legislative intent may be commonplace, but as we have held, relying on such materials is verboten where the statute itself is absolutely clear."). Rules of construction and other extrinsic aids may not be used to create an ambiguity in a statute. *Fitzgerald*, 996 S.W.2d at 866.

## II. Debit Dock/Overtime Claim

In its first issue, Houston contends the trial court erred when it concluded Houston was required to reimburse Spratt and Springer for the previously paid overtime Houston deducted from their termination paychecks. Houston argues the trial court misconstrued section 142.0017 of the Local Government Code when it determined that "any authorized sick time, vacation, meal time, holidays, compensatory time, death in the family or any other authorized leave should be considered as work time for calculating an average to determine the [fire fighters'] overtime...." In support of this contention, Houston makes several arguments.

First, Houston asserts section 142.0017 only requires it to count a fire fighter's time at work, on call, or on paid benefit leave in the calculation to determine whether a fire fighter is entitled to overtime compensation. Houston points to the fact that, in the November 2001 schedule, HFD created three "debit days" during

each 72-day work cycle and assigned the last eight hours of each 24-hour "debit day" as the designated overtime shift. Houston then continues its argument by asserting nothing in the statutory scheme prevents it from making that designation and then requiring fire fighters to be physically present for work during that 8-hour overtime shift to be eligible for overtime compensation. Under that argument, if the fire fighter was not present for the overtime shift, regardless of the reason, he was considered off-duty, in other words it was unpaid time off, and the time should not be included in the overtime calculation. Houston then points out that neither Spratt nor Springer was present for work on the dates in question and therefore those hours should not be included in the overtime calculation. Houston concludes that, once those hours are excluded, Spratt and Springer's schedules did not exceed the maximum of 46.7 average hours per work week and they were not entitled to any overtime pay.

Second, Houston refers to Houston Ordinance 14–223, which provides, in part: "[b]enefits may only be utilized and will only be charged for days and hours upon which an employee is regularly scheduled to work." City of Houston Code of Ordinances § 14–223. Houston argues no statute conflicts with this ordinance and it therefore prevents Spratt and Springer from using accrued vacation or holiday leave during the overtime portion of a "debit day."

Finally, Houston argues the trial court's construction of section 142.0017 produces an absurd result: requiring Houston to pay fire fighters overtime for hours they were not physically present for work.

We begin with the language of section 142.0017 of the Local Government Code. The statute provides, in pertinent part, that a

fire fighter ... may not be required or permitted to work for more than an average of 46.7 hours a week during a 72–day work cycle designated by the department head. If the fire fighter ... is required to work more than an average of 46.7 hours a week during a 72–day work cycle designated by the department head, the person is entitled to be compensated for the overtime....

Tex. Loc. Gov't Code Ann. § 142.0017(b) (West 2008). The statute then expresses the method for calculating the average number of hours in a fire fighter's work week during a 72–day work cycle. *Id.* at § 142.0017(e). To determine a fire fighter's eligibility for overtime, HFD must count all hours:

> (1) during which the fire fighter or other member of the fire department is required to remain available for immediate call to duty by continuously remaining in contact with a fire department office by telephone or radio; and

> (2) that are sick time, vacation time, meal time, holidays, compensatory time, death in the family leave, or any other authorized leave.

*Id.*

We conclude the method of calculation prescribed under section 142.0017 is a straightforward computation of overtime pay encompassing each of the above elements. Accordingly, Houston must add (1) all hours the fire fighter actually worked; (2) all hours the fire fighter was on call; and (3) all hours the fire fighter was on approved leave.[4] This of course yields the total number of hours for the 72–day work cycle. Houston must then divide this amount by the number of weeks in the 72–day work cycle to determine the average number of hours per work week. If that average exceeds 46.7 hours, then Houston must pay the fire fighter overtime compensation for that overage. *See id.* at § 142.0017(b) (requiring overtime for any hours exceeding 46.7 hours per week average).

■ Houston's argument that it can avoid this simple calculation by requiring a fire fighter to be physically present for the three 8–hour periods designated as overtime shifts in order to earn overtime pay is without merit. Houston's argument ignores the statute's emphasis on the entire 72–day work cycle and the average hours per week. Houston's argument also ignores the plain language of section 142.0017(f) that if a fire fighter is required to work more than a weekly average of 46.7 hours, that "fire fighter ... is entitled to be paid overtime for the excess hours worked *without regard to the number of hours worked in any one week of the work cycle.*" *Id.* at § 142.0017(f) (emphasis added). Because section 142.0017 requires overtime compensation for the additional 24 hours without regard to the number of hours worked in any one week of the work cycle, Houston cannot avoid that obligation by designating certain periods of time within the work cycle as the only hours eligible for overtime compensation.

Houston's argument that Ordinance 24–223 prevents Spratt and Springer from using accrued vacation or holiday leave during the overtime portion of a debit day is also unpersuasive. The ordinance provides:

> Benefits may only be utilized and will only be charged for days and hours upon

---

4. The plain language of section 142.0017(e) requires that Houston, when calculating the hours a fire fighter has worked, must count not only the hours the fire fighter is physically present for duty, but also all hours the fire fighter is on call, on "sick leave, vacation time, meal time, holidays, compensatory time, death in the family leave, or any other authorized leave." Tex. Loc. Gov't Code Ann. § 142.0017(e) (West 2008).

which an employee is regularly scheduled to work. Benefits will not be provided for any extra work days or work hours to which an employee may have been assigned to work on an overtime basis.

City of Houston Code of Ordinances § 24–223. Houston contends this ordinance prohibits Spratt and Springer from using accrued vacation or holiday time to avoid being physically present for the "debit day" overtime shifts but still collect overtime compensation. Houston also asserts no statute conflicts with and thereby prevents the ordinance from controlling the outcome on Spratt and Springer's overtime claim.

Even assuming there is no statute controlling this specific issue, we disagree with the contention that Ordinance 14–223 impacts Spratt and Springer's eligibility for overtime compensation. The evidence in this case was undisputed that the "debit days" and the 8–hour overtime portion of each were regular work days and part of the fire fighters' regularly scheduled work week.[5] Because the "debit days" were regularly scheduled workdays, Ordinance 14–223 did not prohibit the fire fighters from using their accrued vacation or holiday time to miss them.

We turn now to Houston's final contention that the trial court's construction of section 142.0071 leads to an absurd result: paying Spratt and Springer overtime compensation for time they were not physically present at work. We conclude we cannot overturn the trial court's judgment because the result is, in Houston's view, absurd.

The language of section 142.0017 is unambiguous and requires Houston to calculate a fire fighter's eligibility for overtime compensation by adding (1) all hours the fire fighter actually worked; (2) all hours the fire fighter was on call; and (3) all hours the fire fighter was on approved leave. Tex. Loc. Gov't Code Ann. § 142.0017. The evidence was undisputed that Spratt and Springer were on approved leave on the "debit days" at issue here; therefore those hours must be included in the calculation of their average work week during that 72–day work cycle. When those hours are included, their average work week exceeded 46.7 hours and they are entitled to overtime compensation for the overage. While "[t]he notion that public employees should be paid when principally engaged in personal pursuits does not strike any of the members of this Court as sound policy, . . . as judges, we are called upon to apply a statutory command even when it produces a policy of which we disapprove." *Tijerina v. City of Tyler*, 846 S.W.2d 825, 828 (Tex.1992). While a reviewing court "may permissibly consider public policy in construing the intent of the Legislature from an ambiguous provision, we cannot rewrite or . . . deconstruct a plainly worded statute be-

5. The following exchange took place during Chief Connealy's testimony:
Q. A debit day in the Houston Fire Department is part of the regularly scheduled work shift for the firefighter in the fire station isn't it?
A. Yes.
Q. They are required to appear for work that day?
A. Yes.
Q. They are required to stay for a full 24 hours unless they are relieved?
A. Yes.
Q. It's another work day just like every other day, correct?
A. Yes.
Q. And if they call in sick, they—that's a benefit day they can use to not work that debit day just like they could use it on any other scheduled day, correct?
A. Yes.

**564**

cause we believe it does not effectuate sound policy." *Id.* While we may not approve of the Legislature's decision to require Houston to pay fire fighters on approved leave overtime when they are not physically present for work, section 142.0017 of the Local Government Code unequivocally imposes that requirement. *See id.* (addressing a similar argument regarding paying fire fighters while they are on call).

It was undisputed that under the new work schedule initiated in November 2001, each 72–day work cycle contained 24 hours in excess of the statutorily mandated 46.7–hour average work week. The evidence was also undisputed that Spratt and Springer were on approved leave on each of the "debit days" in question.[6] We hold that Houston was required to include the 8–hour physical presence shifts when calculating Spratt and Springer's entitlement to overtime. When that time is included, Spratt and Springer were entitled to overtime compensation. We overrule Houston's first issue.

## III. The Termination Pay Claim

█ In its second issue, Houston contends the trial court erred when it concluded that Houston must calculate appellees' termination pay based on their full salary, which includes: (1) base pay, (2) longevity pay, and (3) premium pay.[7]

Houston's first argument begins by pointing out that the Local Government Code allows it to decide by ordinance whether it will pay fire fighters premium pay and the conditions under which it is payable. *See* Tex. Loc. Gov't Code Ann. § 143.114(c). Houston then contends that

its ordinance, which states that when a fire fighter retires, his lump-sum payment for accrued but unused vacation and sick leave will not include any premium pay the fire fighter has earned, but will be based only on the fire fighter's base pay and longevity pay, has not been preempted by any state statute and therefore allowed Houston to pay appellees the way it did. *See* City of Houston Code of Ordinances § 34–3. We disagree.

While the Local Government Code allows Houston to set, by ordinance, the amount of premium pay and the conditions under which it is payable, Houston's ordinances cannot override the statutory scheme established by the Legislature. *See* Tex. Const. art. XI, § 5 (cities with more than five thousand inhabitants may adopt and amend their own charters, but "no charter or ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State or of the general laws enacted by the Legislature of this State"); *Dallas Merch.'s and Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 491 (Tex. 1993) ("An ordinance of a home-rule city that attempts to regulate a subject matter preempted by a state statute is unenforceable to the extent it conflicts with the state statute."). "If the Legislature chooses to preempt a subject matter usually encompassed by the broad powers of a home-rule city, it must do so with unmistakable clarity." *Dallas Merch.'s and Concessionaire's Ass'n*, 852 S.W.2d at 491. As explained below, we conclude the Legislature has "done so" in this case.

Section 143.115 of the Local Government Code specifically addresses payment for

---

**6.** Springer was riding out his accrued but unused holiday time from July 2, 2003 until his retirement in January 2004. This period of time included four "debit days." Spratt

was on approved vacation on October 27, 2002, which was a "debit day."

**7.** Premium pay consists of educational incentive pay and assignment pay.

accumulated vacation leave for Houston fire fighters. *See* Tex. Loc. Gov't Code Ann. § 143.115. This section provides, in pertinent part, that "[a] fire fighter ... is entitled to receive in a lump-sum payment the full amount of the person's salary for the period of the person's accumulated vacation leave up to a maximum of 60 working days." *Id.*

Payment of accumulated sick leave for Houston fire fighters is handled by Section 143.116 of the Local Government Code. *Id.* at § 143.116. It states that a fire fighter is "entitled to receive in a lump-sum payment the full amount of the fire fighter's ... accumulated sick leave...." *Id.* at § 143.116(a). Sick leave accumulated before September 1, 1985 is valued at the fire fighter's salary on August 31, 1985. *Id.* at § 143.116(b). Sick leave accumulated after September 1, 1985 is valued at the fire fighter's average salary in the fiscal year on which the sick leave was accumulated. *Id.* As these statutes make clear, Houston must pay appellees their lump-sum payments for accumulated vacation and sick leave based on their full salaries.

We turn now to the issue of what constitutes a fire fighter's full salary. Section 143.110 of the Local Government Code lists the components of a fire fighter's salary. *Id.* at § 143.110. This section provides that, in addition to base salary, a fire fighter is entitled to longevity pay, seniority pay, educational incentive pay, assignment pay, and shift differential pay, if applicable. *Id.* at § 143.110(b). Based on this explicit definition of a fire fighter's salary, Houston's contrary ordinance limiting a fire fighter's lump-sum termination payment to just base pay and longevity pay has been preempted and must give way. *See* Tex. Const. art. XI, § 5; *Dallas Merch.'s and Concessionaire's Ass'n*, 852 S.W.2d at 491. Based on the plain language of these three statutes, we hold that

the full amount of a fire fighter's salary includes base pay, longevity pay, and premium pay and Houston was required to include the premium pay earned by each appellee in the calculation of that fire fighter's lump-sum termination payment for accrued but unused vacation and sick leave.

Houston's reference to the predecessor of this statute does not change this result. Houston asserts that we should exclude premium pay from the fire fighter's lump-sum termination payments because the "plain language of § 143.110's pre-codification wording further shows that the Legislature never considered premium pay to be part of a fire fighter's 'salary,' because the former statute referred to premium pay as something available 'in addition to' a fire fighter's 'salary.' "

■ The Texas Supreme Court has addressed this very issue when dealing with the Tax Code:

> [P]rior law and legislative history cannot be used to alter or disregard the express terms of a code provision when its meaning is clear from the code when considered in its entirety.... Nor can the Code Construction Act's directive to the Legislative Council to refrain from changing the sense, meaning, or effect of a previous statute, ... be used as a basis to alter the express terms of a code that the Legislature enacts as a law, even when the Council's language does change the prior, repealed law.
>
> ... To the extent that these latter sections of the Tax Code do change prior law, the specific import of their words as written must be given effect.

*Fleming Foods of Texas, Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex.1999). We conclude that the plain language of the Local Government Code must be given effect over any conflicting language that may be found in the pre-codification version of the

statute. *See id.* at 286 ("We are compelled to conclude that when, as here, specific provisions of a 'nonsubstantive' codification and the code as a whole are direct, unambiguous, and cannot be reconciled with prior law, the codification rather than the prior, repealed statute must be given effect.").

The same reasoning applies to Houston's legislative acceptance argument. Here, Houston contends we must reverse the trial court's decision that the appellees' termination pay must include the premium pay they had earned because the "Legislature has indicated its implicit approval of [Houston's] definition of 'salary,' through its lack of challenge to that definition through three decades of amendments to the statutes." Assuming without deciding that the doctrine of legislative acceptance can even apply to a home-rule city's ordinances, "an administrative agency's construction of a statute cannot contradict the statute's plain meaning." *Id.* at 282. Because the relevant statutes are not ambiguous, Houston cannot resort to the doctrine of legislative acceptance to vary their plain meaning. *Id.*

We turn now to Houston's request that we should "give meaning to the differences between the Houston statute and the San Antonio statute."[8] With regard to the issue of the salary a fire fighter is entitled to have included in his termination lump-sum payment, we conclude that the statutory language in these three sections is functionally identical. *See* Tex. Loc. Gov't Code Ann. § 143.045(c) (a fire fighter is entitled to receive a lump-sum termination payment in "the full amount of the person's salary"); § 143.115 (a fire fighter is entitled to "the full amount of the person's salary" for the accumulated vacation leave); § 143.116 (a fire fighter is entitled to a lump-sum payment for accumulated sick leave valued at either the amount of the fire fighter's salary on August 31, 1985 or the average salary if the leave was accumulated after September 1, 1985).

Next, we examine Houston's contention that the fire fighters are barred or estopped from challenging the limitations imposed by ordinance on their lump-sum termination payments. According to Houston, appellees' "un-complaining acceptance of those benefits bars them from now claiming that the condition on those benefits—that they will not be included in termination pay—unconstitutionally conflicts with state statutes."

This issue has been conclusively resolved against Houston's position: "a public officer cannot estop himself from claiming his statutory salary by agreeing to accept, or by accepting, less than the salary provided by law." *Morrison v. City of Fort Worth,* 138 Tex. 10, 155 S.W.2d 908, 910 (1941); *McGuire v. City of Dallas,* 141 Tex. 170, 170 S.W.2d 722, 727 (1943); *accord Douthit v. Ector Cnty.,* 740 S.W.2d 16, 17 (Tex.App.-El Paso 1987, writ denied); *Broom v. Tyler County Comm'rs Court,* 560 S.W.2d 435, 437 (Tex.Civ.App.-Beaumont 1977, no writ); *Fannin County v. Dobbs,* 202 S.W.2d 950, 951 (Tex.Civ.App.-Texarkana 1947, no writ).

Finally, we address Houston's contention that if "the limiting ordinances are unconstitutional and void, ... then the interdependent ordinances granting the premium pay are equally void and unenforceable." Once again, we disagree.

Houston cites the case of *Rose v. Doctors Hospital* in support of its contention that if the ordinance restricting a fire fighter's lump-sum termination payment to just base pay and longevity pay is

8. Local Government Code sections 143.115, 143.116 and 143.045(c).

struck down because it conflicts with a statute, then all ordinances dealing with premium pay must be struck down as well.[9] *See Rose v. Doctors Hospital,* 801 S.W.2d 841, 844 (Tex.1990) (holding provisions of Medical Liability and Insurance Improvement Act declared unconstitutional were severable and therefore did not invalidate entire statute). In *Rose,* the Supreme Court pointed out that the goal of a severability clause is to retain valid portions of a statute or ordinance whenever possible. *Id.* It then reaffirmed the test for determining when a finding of unconstitutionality of one portion of a statute invalidates the whole statute:

> [w]hen . . . a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, dependent on each other, operating together for the same purpose, or otherwise so connected in meaning that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section, . . . but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must stand.

*Id.* (quoting *Western Union Telegraph Co. v. State,* 62 Tex. 630 (1884)).

We begin by noting that the Houston Code of Ordinances has a general severability clause. In addition, we conclude, under the test for severability reaffirmed in *Rose,* once the ordinances limiting a fire fighter's lump-sum termination payment to just his base pay and longevity pay are eliminated, the remainder are complete and capable of being executed in accordance with the intent of Houston's legislative body: paying fire fighters a salary that includes base pay, longevity pay, and any premium pay the fire fighter has earned. Therefore, we reject Houston's argument the entire premium pay scheme must be declared unenforceable.

Having addressed and rejected each argument raised, we overrule Houston's second issue.

### Conclusion

Having overruled both of Houston's issues on appeal, we affirm the trial court's final judgment.

---

**9.** "The rules governing the construction of state statutes also control our construction of municipal ordinances." *City of Pearland v. Reliant Energy Entex,* 62 S.W.3d 253, 256

(Tex.App.-Houston [14th Dist.] 2001, pet. denied) (citing *Mills v. Brown,* 159 Tex. 110, 316 S.W.2d 720, 723 (1958)).