# IN THE SUPREME COURT OF TEXAS

═══════════
No. 11-0778
═══════════

The City of Houston, Texas, Petitioner,

v.

Roger Bates, Michael L. Spratt and Douglas Springer, Respondents

═══════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas
═══════════════════════════════════════════════

Justice Guzman, joined by Justice Boyd, concurring in part and dissenting in part.

I agree with the Court that the firefighters are entitled to additional termination pay. But I disagree that the firefighters are not entitled to overtime pay under their debit dock claim and therefore dissent from Part II.A of the opinion and the judgment. Chapter 142 of the Local Government Code requires municipalities to pay overtime rates once a firefighter reaches a certain statutory level of hours, which includes time on call as well as "any other authorized leave." Here, the question presented is whether "any other authorized leave" includes unpaid authorized leave. Our canons for construing statutes are numerous, but the cardinal canon is that statutes mean what they say. We do not resort to lesser canons when the plain meaning of a term is unambiguous. Because the Court here affirms that the plain meaning of leave is an authorized absence and does not exclude unpaid leave, that should end its inquiry. But the Court proceeds to use the canon of

*ejusdem generis* to create an ambiguity and then resolve it in a manner that violates our cardinal canon by holding that the list of types of leave preceding the term indicates that it is constricted to paid leave. This interpretation is an especially peculiar result, given that the Legislature explained in Chapter 142 that authorized leave includes forms of unpaid leave such as military leave. Our canons of construction are meant to glean legislative intent—not defeat it. Authorized leave means what it says, which necessarily includes unpaid leave. Because I would hold that the department must comply with its statutory duty to compensate the firefighters at overtime rates for leave it approves, I respectfully dissent.

## I. Background

Section 142.0017 of the Local Government Code requires the Houston Fire Department (HFD) to compensate firefighters for overtime pay if they average over 46.7 hours of work per week during a 72-day work cycle. TEX. LOC. GOV'T CODE § 142.0017(b). Before 2001, HFD scheduled firefighters for 18 24-hour shifts during a 72-day work cycle (averaging 42 hours per week over a 72-day work cycle). Some of these shifts included debit days, where a firefighter was required to work a different schedule and frequently at a different station. These 20 shifts over a 72-day period averaged just under 46.7 hours per week for the cycle and allowed HFD to avoid paying overtime rates.

Staffing shortages caused HFD to include an additional shift to the 72-day work cycle in 2001. The additional debit day increased the 72-day work cycle average to 49 hours per week, obligating HFD to pay 2.3 hours of overtime compensation per week. Debit days were unpopular among firefighters because of the different shift and potential for a different station, resulting in high

2

absenteeism. But in light of the staff shortage, attendance on debit days became important for HFD. To encourage attendance on debit days while attempting to avoid an obligation to pay overtime, HFD designated the last eight hours of each debit day as the time eligible for overtime pay. If a firefighter was on authorized leave on a 24-hour debit day, HFD policy stated that it would pay the firefighter for the first 16 hours (with an offsetting deduction in their leave account) but not pay base or overtime pay for the remaining eight hours or deduct from their leave account. Nonetheless, HFD mandated that firefighters work this eight hour shift or have approved leave, just as any other work shift, or be subject to disciplinary action. In other words, HFD required firefighters to have approved leave available for the entire debt day but would not deduct the final eight hours of leave in an attempt to avoid the statutory obligation to pay overtime rates. Had HFD allowed the use of paid leave for these eight hours, it admits it would be obligated to compensate the firefighters at overtime rates (if the average hours exceeded 46.7 per week for the 72-day work cycle).

When Michael L. Spratt and Douglas Springer retired from HFD, the department claimed it had overpaid them for debit days they did not physically work and deducted the claimed overpayments from their termination checks. Springer's deductions were due to "riding out" accumulated holiday time on debit days. Spratt's deductions were due to vacation leave on debit days. Springer and Spratt sued, asserting that under section 142.0017, overtime pay includes authorized leave. The trial court awarded them damages and the court of appeals affirmed. __ S.W.3d __.

3

## II. Discussion

This statutory construction case requires us to assess some of the numerous canons of construction we have developed over time to aid in divining the Legislature's intent in a statute. As the United States Supreme Court has observed,

> canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations omitted). *See also Tex. Natural Res. Conservation Comm'n v. Lakeshore Util. Co.*, 164 S.W.3d 368, 378 (Tex. 2005) ("Our primary objective in construing [a statute] is to ascertain and give effect to the Legislature's intent by first looking at the statute's plain and common meaning."). If the meaning of the statute is not apparent from its language, we may examine not only the language of the specific section at issue but also the statute as a whole. *In re Office of the Attorney Gen.*, __ S.W.3d __, __ (Tex. 2013).

Section 142.0017(b) of the Local Government Code requires HFD to compensate firefighters at overtime rates for being required to work more than an average of 46.7 hours per week in a 72-day work cycle the firefighter. TEX. LOC. GOV'T CODE § 142.0017(b). Section 142.0017(e) specifies that the hours a firefighter is required to work includes the hours:

> (1) during which the fire fighter . . . is required to remain available for immediate call to duty by continuously remaining in contact with a fire department office by telephone or by radio; and

> (2) that are sick time, vacation time, meal time, holidays, compensatory time, death in the family leave, or *any other authorized leave*.

4

*Id*. § 142.0017(e) (emphasis added). The statute requires HFD to compensate firefighters for overtime at time-and-a-half rates. *Id*. § 142.0017(f). HFD requires firefighters to have approved leave if not physically present for debit days but does not pay them for the final eight hours of leave each debit day or deduct those eight hours from their leave accounts. Spratt and Springer assert that the Local Government Code does not grant HFD the authority to determine which hours a firefighter is required to work to qualify for overtime compensation. Regardless of whether this opaque procedure complied with other applicable state laws, the question this appeal presents is whether approved leave encompasses unpaid leave.

The Court appropriately begins its analysis with the cardinal canon of construction by acknowledging that the common meaning of leave is an "[e]xtended absence for which one has authorization."[1] This common meaning of the term leave does not exclude unpaid leave from its ambit. Because the common meaning of the term is clear, this should end the Court's inquiry.

Undeterred by the cardinal canon of construction, the Court resorts to a single lesser canon, *ejusdem generis*, in an attempt to create ambiguity in the term and then resolve that ambiguity in a manner inconsistent with the term's common meaning. The Court reasons that the types of specific leave preceding "other authorized leave" are types of paid leave, and that other authorized leave must necessarily refer only to types of paid leave. Even setting aside that the result of this canon violates our cardinal canon of common meaning, this interpretation also violates our canon to examine the

---

[1] BLACK'S LAW DICTIONARY 973 (9th ed. 2009). *See also* THE AMERICAN HERITAGE COLLEGE DICTIONARY 773 (3d ed. 2000) (defining leave as "[o]fficial permission to be absent from work or duty"); THE OXFORD ILLUSTRATED DICTIONARY 481 (2d ed. 1975) (defining leave as "permission to be absent from duty").

statute as a whole. *Office of the Attorney Gen.*, __ S.W.3d at __. While section 142.0017(e) does not define "any other authorized leave," sections 142.0015(e-1) and (f-1) refer to "authorized leave, including attendance incentive leave, vacation leave, holiday leave, compensatory time off, jury duty, military leave, or leave because of a death in the family." TEX. LOC. GOV'T CODE § 142.0015(e), (e-1), (f-1). This list includes three additional types of authorized leave: incentive leave, jury duty, and military leave. *Id*. Section 143.072 defines military leave as a "leave of absence without pay." *Id*. § 143.072(a). Thus, in addressing compensation and leave for firefighters in Chapter 142, the Legislature has described "authorized leave" to include leave without pay, such as military leave. Both the common meaning of "any other authorized leave" and the context of the statute indicate that the term encompasses unpaid leave. Accordingly, section 142.0017 obligates HFD to pay the firefighters the overtime compensation they seek under their debit clock claim.

In response, the Court claims that examining the Legislature's use of the term authorized leave in section 142.0015 is unhelpful because section 142.0015 applies to less populous municipalities. __ S.W.3d __, __. But different sections within a statute necessarily address different matters. This does not negate our principle of examining the entire statute to ascertain the meaning of an undefined term. *See Office of the Attorney Gen.*, __ S.W.3d at __. If the Legislature intended the same term to mean two entirely different things within the same statute, it could have made that distinction clear by defining "any other authorized paid leave" in the statute at issue. It did not, and we must respect that choice. Recently, we examined the phrase "abuse or neglect" in section 161.001(1)(O) of the Family Code—the statute setting forth the grounds to involuntarily terminate parental rights. *In re E.C.R.*, __ S.W.3d __, __ (Tex. 2013). Because the termination

6

statute did not define abuse or neglect, we examined the use of that phrase in the Family Code's removal statutes and determined that abuse or neglect encompasses risk of abuse or neglect. *Id*. at __. The fact that termination and removal are distinct topics did not dissuade us from ascertaining the Legislature's intent from its use of the same phrase in different locations within the statute. Likewise, it should not so deter the Court here.

In conclusion, Chapter 142 of the Local Government Code requires HFD to compensate firefighters at overtime rates when their hours exceed certain statutory levels. This calculation includes time physically worked, time on call, and any approved leave. The plain meaning of the term leave is an approved absence and does not exclude unpaid leave. Our cardinal rule of construction dictates that our inquiry end there. Because HFD refused to compensate the firefighters at overtime rates for leave it approved but did not pay for, I would affirm the judgment of the court of appeals. Because the Court reverses this portion of the court of appeals' judgment and renders judgment that the firefighters take nothing on their overtime claim, I respectfully dissent.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** June 28, 2013

7