# IN THE SUPREME COURT OF TEXAS

═══════════
No. 11-0778
═══════════

THE CITY OF HOUSTON, TEXAS, PETITIONER,

v.

ROGER BATES, MICHAEL L. SPRATT AND DOUGLAS SPRINGER, RESPONDENTS

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

**Argued January 9, 2013**

JUSTICE GREEN delivered the opinion of the Court, in which CHIEF JUSTICE JEFFERSON, JUSTICE JOHNSON, JUSTICE WILLETT, and JUSTICE DEVINE joined; in which JUSTICE HECHT and JUSTICE LEHRMANN joined as to Parts I and II.A; and in which JUSTICE GUZMAN and JUSTICE BOYD joined as to Parts I and II.B.

JUSTICE HECHT filed an opinion concurring in part and dissenting in part, in which JUSTICE LEHRMANN joined.

JUSTICE GUZMAN filed an opinion concurring in part and dissenting in part, in which JUSTICE BOYD joined.

This appeal involves a pay dispute between the City of Houston and three retired fire fighters previously employed by the Houston Fire Department (HFD). The retired fire fighters sued the City to recover allegedly unauthorized deductions from their termination pay upon retirement. The retired fire fighters asserted two distinct claims. First, two of the retired fire fighters claimed that the City

wrongfully deducted pay for overtime hours that HFD required fire fighters to work after the implementation of a new shift schedule in November 2001. Second, the retired fire fighters alleged that the City improperly calculated each fire fighter's "salary" for purposes of paying termination pay upon their retirement. The trial court found in favor of the retired fire fighters on both claims. The court of appeals affirmed the trial court's judgment, which awarded two of the retired fire fighters reimbursement for overtime pay and all of the retired fire fighters additional termination pay for accrued and unused sick and vacation leave. ___ S.W.3d ___, ___ (Tex. App.—Houston [14th Dist.] 2011, pet. granted) (mem. op.). We reverse the court of appeals' judgment as to the first claim related to the overtime pay, affirm its judgment as to the second claim related to additional termination pay, and render judgment consistent with this opinion.

## I. Background

Prior to their retirements, Roger Bates, Michael L. Spratt, and Douglas Springer (collectively, the retired fire fighters) spent their careers as fire fighters with HFD. Spratt and Springer retired in 2004, and Bates retired in 2005. Upon retirement, the City paid the retired fire fighters termination pay pursuant to sections 143.115 and 143.116 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE §§ 143.115–.116. The retired fire fighters ultimately sued the City, seeking reimbursement for (1) overtime pay that the City docked from their termination pay (the "debit dock" claim), and (2) additional termination pay based on the City's exclusion of premium pay from the calculation of their salaries for purposes of paying out the termination pay.

2

## A. Debit Dock Claim

In many urban areas, fire fighters are often required to work 24-hour shifts. Due to the demands of the job, the Legislature has enacted various statutes governing fire fighters' pay and hours. For example, section 142.0017 of the Local Government Code requires a City to compensate a fire fighter for overtime pay if the fire fighter works more than an average of 46.7 hours per week calculated over a 72-day work cycle. TEX. LOC. GOV'T CODE § 142.0017(b). Utilizing a 72-day work cycle, HFD scheduled fire fighters to work one of four shift schedules. In any one shift schedule, a fire fighter would work eighteen 24-hour shifts throughout the 72-day work cycle. Because the shift schedules did not reach the 46.7-hour weekly average, HFD required fire fighters to work two additional 24-hour shifts, called "debit days," each work cycle. On a debit day, HFD assigned a fire fighter to work on a different shift schedule and many times at a different fire station. As a result, debit days were unpopular and had a high rate of absenteeism. Nevertheless, debit days remained a part of the regularly scheduled work shift for fire fighters. Fire fighters were required to show up on a debit day and work just like any other day in their shift schedules.

In November 2001, HFD added an extra 24-hour debit day to each 72-day work cycle due to staffing shortages. This extra debit day pushed the fire fighters' weekly average of hours worked to forty-nine—entitling them to 2.3 hours of overtime pay each week (or twenty-four hours over the course of the 72-day work cycle). To encourage attendance on debit days, HFD designated the last eight hours of each debit day as the portion eligible for overtime pay. HFD required a fire fighter to be physically present to get overtime pay for that time period. Under HFD's accounting procedures, if a fire fighter was on authorized leave on a debit day, then HFD paid the fire fighter

3

for sixteen hours, charged his leave account for those sixteen hours, but did not pay overtime pay for the remaining eight hours and did not charge his leave account for those hours. This schedule consisting of an average of forty-nine hours a week lasted for approximately two years.

When Springer and Spratt retired from HFD, the City deducted previously paid overtime from Springer's and Spratt's termination checks. The City claimed that Springer and Spratt were overpaid for "Debit Day Overtime," which, according to the City, was generated from the City paying overtime for debit days Springer and Spratt did not physically work. The overtime pay that the City deducted from Springer's termination check related to 8-hour shifts on debit days that the City allowed Springer to "ride out" prior to retirement.[1] The overtime pay that the City deducted from Spratt's termination check related to vacation leave he took on a scheduled debit day. Springer and Spratt do not dispute that they did not physically work the debit days for which the City previously paid them for overtime. Instead, they argued in the trial court that they were on authorized leave during those debit days. And, because section 142.0017 requires that time spent on "authorized leave" be included in calculating the number of hours a fire fighter worked during a 72-day work cycle, they claimed that they were entitled to overtime pay regardless of whether they were physically present for the designated overtime period. After a bench trial, the trial court rendered judgment for Springer and Spratt on their debit dock claims and awarded them $610.15 and $152.20, respectively. The court of appeals affirmed. ___ S.W.3d at ___.

---

[1] The City allowed fire fighters to "ride out" accumulated holiday time prior to retirement, which effectively allowed retiring fire fighters to be paid for all of their accumulated holiday time despite the ordinance which otherwise limited fire fighters to receive pay for a maximum of eleven accumulated holidays upon termination. HOUSTON, TEX., CODE OF ORDINANCES ch. 34, art. I, § 34-59(e)(6).

## B. Termination Pay Claim

The Local Government Code and the City's ordinances allow fire fighters to accumulate unused sick and vacation leave. *See, e.g.*, TEX. LOC. GOV'T CODE §§ 143.045–.046; HOUSTON, TEX., CODE OF ORDINANCES ch. 34, art. I, § 34-3. When a fire fighter leaves HFD's employment, sections 143.115 and 143.116 of the Local Government Code entitle a fire fighter to a lump-sum payment for accumulated but unused vacation and sick leave. *See* TEX. LOC. GOV'T CODE §§ 143.115 (vacation leave), .116 (sick leave). In most cases, sections 143.115 and 143.116 require accumulated vacation and sick leave to be valued at the fire fighter's "salary" at the time the fire fighter accumulated the leave. *See id.* §§ 143.115(b), .116(b). This lump-sum payment is often referred to as termination pay.

The City enacted ordinances that excluded certain types of premium pay, including educational incentive pay and assignment pay, from the definition of "salary" for purposes of calculating accumulated benefit leave for termination pay. *See* HOUSTON, TEX., CODE OF ORDINANCES ch. 34, art. I, § 34-3(c); *see also id.* ch. 14, art. III, §§ 14-243, 14-244 (requiring sick leave to be valued at a fire fighter's "daily average rate of base pay plus longevity"). The ordinances create a financial disparity between the amount of pay a fire fighter received when he utilized his sick and vacation leave during his employment and when he received accumulated sick and vacation leave as termination pay. For instance, an HFD fire fighter that used sick or vacation leave to miss a shift received his base pay plus all other forms of premium pay that the fire fighter was entitled to at that time, which could include longevity pay, educational incentive pay, and assignment pay. In other words, if an HFD fire fighter took a day of paid leave, the City paid the fire fighter the same

5

as if he had physically worked that day. On the other hand, the City paid a fire fighter his base pay and only longevity pay as termination pay for all accumulated sick and vacation leave. Under this "long-term City policy," an HFD fire fighter was financially better off utilizing all of his paid leave during his employment than accumulating it for purposes of termination pay upon retirement.

Upon retirement, the City issued checks to the retired fire fighters for their termination pay, which did not include the premium pay. The retired fire fighters challenged the ordinances on the grounds that they were preempted by the statutory scheme promulgated by the Legislature and codified in the Local Government Code. The trial court found that the retired fire fighters were entitled to the full amount of their salaries for unused and accrued sick and vacation leave, which required inclusion of educational incentive pay and assignment pay. The court of appeals affirmed. ___ S.W.3d at ___.

## II. Analysis

The City challenges the court of appeals' judgment on the debit dock claim and the termination pay claim. First, the City argues that Springer and Spratt were not entitled to be reimbursed for overtime pay because section 142.0017(e)(2) of the Local Government Code does not require the City to count hours a fire fighter is on unpaid leave for purposes of computing a fire fighter's eligibility for overtime compensation. Second, the City argues that its ordinances are not preempted by provisions of the Local Government Code governing fire fighters' termination pay because the Local Government Code does not explicitly define the term "salary." We address each issue in turn.

6

## A. Debit Dock Claim

The debit dock claim issue requires us to construe section 142.0017 of the Local Government Code, which governs overtime pay and applies to home-rule municipalities like the City of Houston. *See* TEX. LOC. GOV'T CODE § 142.0017(a). Specifically, our task is to determine whether the Legislature intended the phrase "any other authorized leave" in section 142.0017(e)(2) to encompass only other forms of *paid* leave, which is the City's position.

We review issues of statutory interpretation de novo. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 254–55 (Tex. 2012). Our primary objective when interpreting a statute is to give effect to the Legislature's intent. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). We begin with the statute's text and the presumption that the Legislature intended what it enacted. *Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 901 (Tex. 2010). Legislative intent is best expressed by the plain meaning of the text unless the plain meaning leads to absurd results or a different meaning is supplied by legislative definition or is apparent from the context. *Tex. Lottery Comm'n v. First State Bank of Dequeen*, 325 S.W.3d 628, 635 (Tex. 2010). When the text of the statute is clear and unambiguous, we apply the statute's words according to their plain and common meaning unless a contrary intention is apparent from the statute's context. *Molinet*, 356 S.W.3d at 411.

Beginning with the statute's text, section 142.0017(b) provides, in pertinent part:

A fire fighter . . . may not be required or permitted to work more than an average of 46.7 hours a week during a 72-day work cycle designated by the department head. If the fire fighter . . . is required to work more than an average of 46.7 hours a week during a 72-day work cycle designated by the department head, the person is entitled to be compensated for the overtime as provided by Subsection (f).

7

TEX. LOC. GOV'T CODE § 142.0017(b). To calculate how many hours a fire fighter is "required to work" for purposes of computing the fire fighter's weekly average in a 72-day work cycle, section 142.0017(e) instructs the City that "all hours are counted":

> (1) during which the fire fighter . . . is required to remain available for immediate call to duty by continuously remaining in contact with a fire department office by telephone or by radio; and
> (2) that are sick time, vacation time, meal time, holidays, compensatory time, death in the family leave, or any other authorized leave.

*Id.* § 142.0017(e). If the City requires a fire fighter to work hours in excess of a weekly average of 46.7 hours per 72-day work cycle, then section 142.0017(f) requires the City to pay a fire fighter overtime "without regard to the number of hours worked in any one week of the work cycle." *Id.* § 142.0017(f).

Simply put, the statutory scheme in section 142.0017 requires the City to pay fire fighters overtime rates when a fire fighter was required to work in excess of the 46.7-hour weekly average computed over a 72-day work cycle. *Id.* § 142.0017(b), (f). To compute the number of hours a fire fighter was required to work in a 72-day work cycle, the City must add (1) all hours physically worked, (2) all hours spent on call, and (3) all hours that fall within the enumerated categories in section 142.0017(e)(2), which includes "any other authorized leave." *See id.* § 142.0017(e). To get the weekly average, the City may divide the total by 72 days and then multiply this daily average by seven (or divide the total by the number of weeks in a 72-day work cycle). If the weekly average exceeds 46.7, then the City is required to pay overtime at time-and-a-half rates for the excess time. *Id.* § 142.0017(f).

The dispute in this case centers on the phrase "any other authorized leave" in section 142.0017(e)(2). Our rules of statutory construction dictate that we apply the term's plain meaning unless the Legislature has prescribed the term a different meaning—either expressly or by context—or the plain meaning leads to an absurd result. *See Tex. Lottery Comm'n*, 325 S.W.3d at 635. We note first that the term "leave" is not expressly defined by Chapter 142 of the Texas Local Government Code. Black's Law Dictionary defines "leave" as an "[e]xtended absence for which one has authorization." BLACK'S LAW DICTIONARY 973 (9th ed. 2009). Webster's New International Dictionary defines "leave" as "an authorized absence or vacation from duty or employment usu. [usually] with pay." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1287 (2002). Neither definition, however, provides that "leave" always means only paid leave. Whereas we are typically inclined to apply a term's common meaning, a contrary intention is apparent from the statute's context. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning.").

The context of section 142.0017 demonstrates that the phrase "any *other* authorized leave" cannot be read in isolation. *See In re Hall*, 286 S.W.3d 925, 928–29 (Tex. 2009) ("[W]e will not give an undefined statutory term a meaning that is out of harmony or inconsistent with other provisions in the statute."). If the Legislature intended the phrase "authorized leave" to be interpreted according to its common meaning (i.e., encompassing all forms of leave, both paid and unpaid) and without reference to the surrounding statutory scheme, then its specific enumeration of six forms of paid leave that precede the phrase would have been for naught. *See Tex. Lottery*

9

*Comm'n*, 325 S.W.3d at 635 ("We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind."). When general words follow specific, enumerated categories, we limit the general words' application to the same kind or class of categories as those expressly mentioned. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003). This statutory construction aid, known as *ejusdem generis*, requires us to construe words no more broadly than the Legislature intended.[2] *See Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). In addition, "the meaning of particular words in a statute may be ascertained by reference to other words associated with them in the same statute." *City of San Antonio*, 111 S.W.3d at 29; *see also Combs*, 340 S.W.3d at 441 ("It is a fundamental principle of statutory construction and indeed of language itself that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used."). Here, the phrase "any other authorized leave" is preceded by six categories of paid leave: "sick time, vacation time, meal time, holidays, compensatory time, death in the family leave." TEX. LOC. GOV'T CODE § 142.0017(e)(2). Given the surrounding statutory scheme, we conclude that the Legislature intended "any other authorized leave" in section 142.0017(e)(2) to have the limited meaning of encompassing only other forms of *paid* leave.

---

[2] The dissent criticizes the Court's use of the statutory construction canon *ejusdem generis* because, in the dissent's view, the term "leave," read in isolation, is unambiguous and thus should be construed as inclusive of both paid and unpaid leave. ___ S.W.3d at ___. As this Court has repeatedly noted and as the dissent concedes, however, words cannot be construed separately from the context in which they are used. *See, e.g.*, *City of Waco v. Kelley*, 309 S.W.3d 536, 542 (Tex. 2010). In construing section 142.0017(e)(2), the dissent ignores important contextual cues—six forms of paid leave preceding "any other authorized leave." Yet when construing a similar phrase within section 142.0015 in support of the dissent's construction of "leave" in section 142.0017(e)(2), the dissent relies on the statutory context—a form of unpaid leave following "authorized leave." The dissent cannot have it both ways. As the dissent's own analysis indicates, and as our statutory construction cases make clear, context matters. *See, e.g.*, *Combs*, 340 S.W.3d at 441.

The dissent reaches the conclusion that "leave" in section 142.0017(e)(2) includes unpaid leave by construing the term as it is used within the context of two provisions in section 142.0015—provisions that, by their owns terms, do not apply to the City's fire fighters. ___ S.W.3d at ___ (Guzman, J., dissenting in part). *Compare* TEX. LOC. GOV'T CODE § 142.0017(a) ("This section applies only in a municipality with a population of more than 1.5 million."), *with id.* § 142.0015(e–1) (providing that this subsection applies only to municipalities with a population of one million or more that have *not* adopted Chapter 143), *and id.* § 142.0015(f–1) (providing that this subsection applies only to police officers). This construction would require us to draw meaning from the Legislature's use of "leave" in a context where the term is surrounded by additional forms of leave that the Legislature did not include in the statute that applies to the City in this case. *Compare id.* § 142.0017(e)(2) (providing that all hours are counted "that are sick time, vacation time, meal time, holidays, compensatory time, death in the family leave, or any other authorized leave"), *with id.* § 142.0015(e–1) (providing that hours worked include "any authorized leave, including attendance incentive leave, vacation leave, holiday leave, compensatory time off, jury duty, military leave, or leave because of a death in the family"), *and id.* § 142.0015(f–1) (same). We must presume, however, that the Legislature's inclusion of only forms of paid leave and its omission of forms of unpaid leave in section 142.0017(e)(2) were purposeful. *See Quick v. City of Austin*, 7 S.W.3d 109, 123 (Tex. 1998) (presuming that the omission of a phrase contained within similar statutes had a purpose). Accordingly, we decline to construe "leave" based on two provisions that do not apply to the City and that are syntactically dissimilar from the provision at issue in this case.

11

The facts are undisputed that, even if Springer and Spratt were on "approved leave" for the designated overtime shift, their leave time was unpaid and their leave accounts were not charged for those shifts. Therefore, applying our narrow construction of "leave" in section 142.0017(e)(2), the City was not required to count each debit day's final 8-hour shift when computing the hours Springer and Spratt were required to work during a 72-day work cycle for purposes of overtime compensation because they were on *unpaid* leave. Accordingly, the court of appeals erred when it affirmed the trial court's judgment awarding both Springer and Spratt reimbursement for previously deducted paid overtime from their termination checks.

**B. Termination Pay Claim**

The termination pay claim involves an issue of statutory preemption. Home-rule cities, like the City of Houston, derive their powers from the Texas Constitution. *See* TEX. CONST. art. XI, § 5; *see also* TEX. LOC. GOV'T CODE § 51.072(a) ("The municipality has full power of local self-government."). The Legislature may limit a home-rule city's broad powers when it expresses its intent to do so with "unmistakable clarity." *Dall. Merch.'s & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490–91 (Tex. 1993). "An ordinance of a home-rule city that attempts to regulate a subject matter preempted by a state statute is unenforceable to the extent it conflicts with the state statute." *Id.* at 491; *see also* TEX. CONST. art. XI, § 5 (providing that no ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State"). If a reasonable construction giving effect to both the state statute and the ordinance can be reached, then a city ordinance will not be held to have been preempted by the state statute. *Dall. Merch.'s*, 852 S.W.2d at 491. Here, we must determine whether the Local

12

Government Code's statutory scheme regarding the payment of accumulated benefit leave upon retirement preempts the City's ordinances that limit the valuation of accumulated benefit leave to base salary and longevity pay only.

We begin with the statutory text. *Fresh Coat, Inc.*, 318 S.W.3d at 901. Sections 143.115 and 143.116 provide that a fire fighter is entitled to receive a lump-sum payment for accumulated sick and vacation leave upon termination of employment. TEX. LOC. GOV'T CODE §§ 143.115, .116. Vacation leave remaining at retirement is valued at the "full amount of the [fire fighter's] salary for the period of the [fire fighter's] accumulated vacation leave." *Id.* § 143.115(b). Sick leave accumulated after September 1, 1985, is valued at the fire fighter's "average salary in the fiscal year in which the sick leave was accumulated." *Id*. § 143.116(b). Thus, determining "salary" is critical in calculating termination pay. Section 143.110 provides the mode of compensation for fire fighters. *Id.* § 143.110. Section 143.110(a) states that a fire fighter is entitled to a "base salary," and subsection (b) continues as follows:

> In addition to the base salary, each fire fighter . . . is entitled to each of the following types of pay, if applicable:
>
>> (1) longevity pay;
>> (2) seniority pay;
>> (3) educational incentive pay as authorized by Section 143.112;
>> (4) assignment pay as authorized by Section 143.113; and
>> (5) shift differential pay as authorized by Section 143.047.

*Id.* § 143.110(a), (b). The retired fire fighters posit that, under this statutory scheme, the Legislature made clear that "salary" includes base salary plus any other forms of pay that a fire fighter was entitled to receive at the time the benefit leave was accumulated for purposes of paying out

13

termination pay. In contrast, the City argues that the statutory scheme does not preempt its power to define the elements of "salary" for purposes of paying out termination pay because the Legislature did not expressly provide a definition of "salary," as the term is used in sections 143.115 and 143.116. The City also avers that the Legislature did not intend to create a substantive change in the law when it replaced "salary" in former Article 1269m of the Texas Revised Civil Statutes with "base salary" in section 143.110 in 1987.

We must determine whether the Legislature expressed an unmistakably clear intent to preempt the City's power to determine how termination pay is calculated through its enactment of sections 143.115 and 143.116. To do so, we must interpret "salary," which the Legislature has not expressly defined, within the context of sections 143.115 and 143.116. We apply the common meaning of "salary" unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results. *Tex. Lottery Comm'n*, 325 S.W.3d at 635. Black's Law Dictionary defines "salary" as "[a]n agreed compensation for services . . . [usually] paid at regular intervals on a yearly basis." BLACK'S LAW DICTIONARY 1454 (9th ed. 2009). Webster's New International Dictionary similarly defines "salary" as "fixed compensation paid regularly . . . for services." WEBSTER'S NEW INTERNATIONAL DICTIONARY 2003 (2002). Applying that plain meaning—compensation paid on a regular basis—within the context of the statutes, we hold that the Legislature clearly intended "salary" to encompass all of the components of compensation that a fire fighter receives regularly, which necessarily includes premium pay.[3]

---

[3] We note that the City's ordinances similarly define "regular rate of pay," as inclusive of base pay, longevity pay, educational incentive pay, assignment pay, and higher classification pay. HOUSTON, TEX., CODE OF ORDINANCES ch. 34, art. III, § 34-59(a)(4).

Our construction of "salary" in sections 143.115 and 143.116 is consistent with the overall legislative scheme related to a fire fighter's compensation. Section 143.110 provides that a fire fighter is entitled to a "base salary" and additional pay for five types of premium pay, if eligible. TEX. LOC. GOV'T CODE § 143.110. The City would have us read "base salary," as used in section 143.110, and "salary," as used in sections 143.115 and 143.116, interchangeably. We refuse to adopt such a construction. The plain language of section 143.110 demonstrates that the Legislature uses "base salary" and "base pay" reciprocally. This is evident from section 143.110(c), which provides that "[a] police department may include the number of years, not to exceed five, that the police officer served in another police department" when "computing longevity pay and *base pay* under this section." *Id.* § 143.110(c) (emphasis added). Therefore, we conclude that the Legislature intended the term "base salary" or "base pay" in section 143.110 to be one of six potential components of a fire fighter's salary—and not merely a term to be used interchangeably with sections 143.115 and 143.116's reference to "salary."

While we agree with the City that the Legislature has clearly given the City discretion to offer educational incentive pay and assignment pay, *see id.* §§ 143.110, .112–.113, we do not agree with the City's position that these sections impliedly extend the City's discretion to define "salary" as it sees fit for purposes of termination pay. Instead, under our construction of "salary" as used in sections 143.115 and 143.116, the statutory scheme preempts the City from excluding those components when calculating termination pay once the City has exercised its discretion to offer such premium pay during a fire fighter's employment with HFD. The provisions of the City's ordinances that exclude forms of premium pay from the definition of "salary" for purposes of termination pay

15

irreconcilably conflict with sections 143.115 and 143.116. Accordingly, the preempted provisions are unenforceable.

The dissent and the City argue that the statute that preceded section 143.110 compels a different construction of "salary" in sections 143.115 and 143.116. ___ S.W.3d at ___ (Hecht, J., dissenting in part). In support, the dissent and the City note that the Legislature did not intend a substantive change in the law when it moved provisions of Article 1269m to the Local Government Code in 1987. *Id.* at ___. Thus, the dissent and the City's position is that the term "base salary" in section 143.110 has no significance in light of former Article 1269m, which provided that fire fighters "shall be paid the same salary and in addition thereto be paid any longevity or seniority or educational incentive pay." *Id.* at ___ (citing Act of May 8, 1973, 63rd Leg., R.S., ch. 140, § 1, 1973 Tex. Gen. Laws 300, 301, *repealed by* Act of May 21, 1987, 70th Leg., R.S., ch. 149, § 49, 1987 Tex. Gen. Laws 707, 1307). However, in light of its surrounding provisions, we are not convinced that former Article 1269m is as clear as the dissent contends. The Legislature used the term "base salary" in Article 1269m reciprocally with "salary." For instance, Article 1269m provides in the next sentence that a lower-classification fire fighter who is hired temporarily in a higher-classification position "shall be paid the *base salary* of such higher position plus his own longevity pay during the time he performs the duties thereof." Act of May 8, 1973, 63rd Leg., R.S., ch. 140, § 1, 1973 Tex. Gen. Laws 300, 301 (repealed 1987) (emphasis added). We construe the Legislature's change from "salary" in the applicable provision of Article 1269m to "base salary," as section 143.110 currently provides, as indicative of the Legislature's clarification of the prior law and not as a substantive change. *Compare id.* (providing that a fire fighter "shall be paid the same salary and in addition

16

thereto be paid any longevity or seniority or educational incentive pay"), *with* TEX. LOC. GOV'T CODE § 143.110 (providing that fire fighters of the same classification "are entitled to the same base salary . . . [and] [i]n addition to the base salary, each fire fighter . . . is entitled to" five types of premium pay, if applicable).

Finally, the City argues that if we hold that the ordinance provisions that limit the availability of premium pay as part of termination pay are unenforceable, then we must also invalidate the City's ordinances that generally authorize payment of premium pay. The City contends that the ordinances are connected in subject matter and cannot be fairly severed and enforced separately from each other. We disagree. When an ordinance contains an express severability clause, the severability clause prevails when interpreting the ordinance. *See* TEX. GOV'T CODE § 311.032(a) ("If any statute contains a provision for severability, that provision prevails in interpreting that statute."); *see also Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 441 (Tex. 1998) (applying the Disciplinary Rules of Professional Conduct's severability clause to reach the conclusion that the remainder of Rule 3.06(d) remains in effect despite the Court's holding that the term "or embarrass" is unconstitutionally vague). Here, the City's Code of Ordinances contains an express severability clause, which provides that:

> [S]ections, paragraphs, sentences, clauses and phrases of this Code are severable, and if any phrase, clause, sentence, paragraph or section of this Code shall be declared unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this Code.

HOUSTON, TEX., CODE OF ORDINANCES ch. 1, § 1-8. Based on the severability clause, the invalidity of provisions that limit the availability of premium pay when calculating termination pay do not

17

affect the validity of any of the remaining portions of the ordinances or any other ordinances. We therefore affirm the portion of the trial court's judgment awarding the retired fire fighters damages for additional termination pay for accrued but unused sick and vacation leave.

### III.  Conclusion

In sum, Springer and Spratt were not entitled to receive reimbursement for overtime pay. However, all of the retired fire fighters were entitled to recover additional termination pay. Accordingly, we reverse the court of appeals' judgment as to the debit dock claim, affirm its judgment as to the termination pay claim, and render judgment that Springer and Spratt take nothing as to their claims for previously docked overtime pay.

_____
Paul W. Green
Justice

OPINION DELIVERED: June 28, 2013