ACCEPTED
03-15-00408-CV
6934112
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/15/2015 2:29:57 PM
JEFFREY D. KYLE
CLERK

**Oral Argument Requested**

## No. 03-15-00408-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/15/2015 2:29:57 PM
JEFFREY D. KYLE
Clerk

# IN THE COURT OF APPEALS OF TEXAS
# THIRD DISTRICT, AT AUSTIN

## ALAN B. RICH d/b/a LAW OFFICE OF ALAN B. RICH,

*Appellant*,

## vs.

## CANTILLO & BENNETT, L.L.P., SPECIAL DEPUTY RECEIVER OF SANTA FE AUTO INSURANCE COMPANY, INC.,

*Appellee.*

**Appeal from the 98th Judicial District Court of Travis County, Texas**
**Hon. Amy Clark Meachum, 201st District Court, Presiding**
**Trial Court Cause No. D-1-GN-15-000799**

## APPELLANT'S REPLY BRIEF

Alan B. Rich
State Bar No. 16842350
4244 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
214.744.5100
214.744.5101 [fax]
arich@alanrichlaw.com

COUNSEL FOR APPELLANT

# Table of Contents

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.      Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     Reply Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.     There Was No Failure of Proof. . . . . . . . . . . . . . . . . . . . . . . 4

       B.     The Receiver's Suit Constitutes a Dispute over Fees. . . . . . . . . . . . . 7

       C.     When the underlying facts intertwine and there is an arbitrable cause of action, the entire case is subject to arbitration. . . . . . . . . . . . 8

       D.     The arbitration savings clause of the Insurance Code does not parse a receiver's capacity in bringing suit, but instead unambiguously provides that any and all arbitration clauses of an insolvent insurer are valid and enforceable against the receiver. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       E.     Under the "Eight-Corners" rule, the fees paid in the Home State and Transatlantic matters are not at issue in this case, and when a third-party attempts to assert rights arising out of a contract containing an arbitration clause, that third-party becomes bound to the arbitration clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       F.     The legal services agreement clearly states that any matter related to the Lincoln General litigation was encompassed by the legal services agreement, and the re-filed Lincoln General case is definitively related to the initially filed, dismissed, then re-filed case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.    Conclusion and Prayer for Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

# Index of Authorities

**Cases**                                                                          **Page**

*City of Houston v. Bates*, 406 S.W.3d 539 (Tex. 2013). . . . . . . . . . . . . . . . . . . . 11

*Daniels v. Walters*, No. 03-03-00375-CV, 2004 WL 741672
    (Tex. App. – Austin, April 8, 2004, pet. denied). . . . . . . . . . . . . . . . . . . . . . 9

*Hillkee, Inc. v. Navarro Sav. Ass'n*, 632 S.W.2d 374
    (Tex. App. – Waco 1982, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749 (Tex. 2001). . . . . . . . . . . . . . . . . 13

*In re Sun Communications, Inc.*, 86 S.W.3d 313
    (Tex. App. – Austin 2002, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Pennzoil Co.*,
    866 S.W.2d 248 (Tex. App. – Corpus Christi 1993, no pet.). . . . . . . . . . . . 4

*Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266 (Tex. 1992). . . . . . . . . . . . . . 9

*Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896 (Tex. 1995). . . . . . . . . . . . . . . 7

*Reagan Nat. Advertising of Austin, Inc. v. Hazen*, No. 03-05-00699-CV,
    2008 WL 2938823 (Tex. App. – Austin, July 29, 2008, no pet.). . . . . . . . . . 9

*Robinson v. Ultramar Diamond Shamrock Corp.*, No. 01-02-0738-CV,
    2003 WL 21101730 (Tex. App. – Houston [1st Dist.], May 15, 2003,
    pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Simi, Inc. v. HEB Grocery Co., L.L.P*, No. 01-11-00506-CV,
    2012 WL 1143649 (Tex. App. – Houston [1st Dist.], Apr. 5, 2012,
    pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Vireo, P.L.L.C. v. Cates*, 953 S.W.2d 489
    (Tex. App. – Austin 1997, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . 9

| **Statutes** | **Page** |
|---|---|

Section 443.005(e), TEX. INS. CODE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Section 443.154(m), TEX. INS. CODE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Section 443.206(a), TEX. INS. CODE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Sections 443.154(s), TEX. INS. CODE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rule 103, TEX. R. EVID... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rule 33.1(a), TEX. R. APP. PRO.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# I.

## Introduction

Leading with the chin, the receiver's opening salvo is to claim there was a failure of proof below since the legal services agreement was not formally introduced into evidence at the hearing. That position is, however, utterly devoid of merit and lacking in candor because the record shows that the agreement was before the trial court and actively debated at the hearing, without any objection whatsoever by the receiver. Indeed, and more troubling, the receiver's own pre-hearing response to the motion to compel arbitration and affidavit, as well as receiver's counsel's statements at the hearing, conceded the existence and content of the agreement and its arbitration clause. This means, of course, that the receiver's newly minted evidentiary objection was waived and cannot now unfairly be employed in this Court to ambush Appellant.

As for the merits, the receiver's brief is remarkable not for its content, but for what is glaringly absent. The receiver completely ignores a host of crucial issues, making no discernable response to the primary legal issues presented to this Court.

- The receiver ignored the authorities holding that when the underlying facts intertwine and there is an arbitrable cause of action, the entire case – including all other causes of action – is subject to arbitration.

- The receiver ignored the canons of statutory interpretation, which teach that the arbitration savings clause of the Insurance Code does not parse a receiver's capacity in bringing suit, but instead unambiguously provides that any and all arbitration clauses of an insolvent insurer's agreements are valid and enforceable against the receiver.

- The receiver ignored the "Eight-Corners" rule and by *ipse dixit* argued that the fees paid in the *Home State* and *Transatlantic* matters are at issue in this case, but they are not.

- The receiver ignored the authorities holding that when a third-party attempts to assert rights arising out of a contract containing an arbitration clause, that third-party becomes bound to the arbitration clause.

- The receiver ignored the language of the arbitration agreement which clearly states that *any matter related to* the *Lincoln General* litigation was encompassed by the legal services agreement, definitively undermining the receiver's argument that the post-failed-settlement re-filing of the *Lincoln General* litigation was not subject to the legal services agreement.

The only important issue which the receiver did *not* ignore is whether any part of its suit against the Appellant can plausibly be termed a dispute over fees paid to the Appellant by Santa Fe. Of course, the receiver argued that its suit does not concern fees paid by Santa Fe; but that position finds absolutely no support in the record. The receiver's "this is not a fee dispute" argument is based solely on a recitation of the legal pigeon-holes into which it believes its factual allegations fall, culminating in a declaration of victory since none of its causes of action are titled "Disputed Fees." Yet, a simple examination of the receiver's petition quickly reveals that the factual basis for the case is *fees paid by Santa Fe to Appellant*, and the primary remedy sought is *the return of all of the fees paid by Santa Fe to the Appellant*. If that is not a dispute over fees, then there is no such thing as a fee dispute.

There was a valid and binding arbitration clause in this case, and the trial court erred in not enforcing it. This Court must, therefore, reverse and render judgment that the claims of the receiver against the Appellant must be arbitrated.

## II.

## Reply Argument

### A.  *There Was No Failure of Proof*

The Receiver first claims that the decision must be affirmed because, at the hearing below, the Appellant did not "introduce into evidence" the legal services agreement which contained the arbitration clause. This complaint was waived.[1]

The legal services agreement containing the arbitration provision was before the trial court at the hearing. Indeed, the trial court's Order acknowledged that the agreement was before the court and considered in reaching its decision. CR 183 ("After reviewing Defendant Alan Rich's Motion to Compel Arbitration and Plea in Abatement,[2] the response, the briefs, the evidence, the pleadings[3] and the arguments of counsel, the Court rules as follows"). Not only was the agreement

---

[1] Although the receiver cites a case that likens the proceedings on a motion to compel arbitration to a summary judgment, and while that may be sometimes the case, it was not the case here, since there was a hearing at which the receiver called the Appellant to testify. A better analogy would be the quasi-evidentiary hearings which sometimes take place on procedural motions such as motions to strike interventions. *See, e.g., National Union Fire Ins. Co. of Pittsburgh, Pa. v. Pennzoil Co.*, 866 S.W.2d 248 (Tex. App. – Corpus Christi 1993, no pet.). In such cases, there is no need for evidentiary formality. *Id.* at 250-51.

[2] The legal services agreement was attached to Appellant's motion and brief to compel. CR 103 at 139.

[3] The legal services agreement was attached to Appellant's Original Answer (CR 24 at 30).

discussed extensively at the hearing. But even prior to the hearing, the *receiver* conceded the existence and nature of the legal services agreement and its arbitration provision.

In the receiver's opposition brief, the agreement's existence and content is admitted in paragraphs 7 and 16 (CR 38, 41),[4] as well as in the receiver's own supporting affidavit in paragraph 10. CR 48[5] Moreover, in the receiver's hearing brief, provided to the trial court at the hearing, it again specifically admitted that: "The arbitration language in the only agreement between Rich and Santa Fe is very

---

[4] "On August 6, 2008, Gamma Group, Santa Fe, CSi Agency Services, Inc., Alpha Partners, Ltd., James D. Maxwell, and James T. Maxwell entered into an engagement agreement with Rich for legal representation in Cause No. 3:07 -CV -1985-B, Lincoln General Insurance Co. v. US Auto Insurance Services, Inc., et al. ("Lincoln General I Lawsuit"), in the U.S. District Court, Northern District of Texas, Dallas Division."

"Rich contends that language in a letter sent to Santa Fe and five other parties for his services in the Lincoln General I Lawsuit creates a binding arbitration agreement for all claims in this lawsuit. Rich Motion to Compel at 1-2. The language in this alleged agreement states: 'In the event of a fee in dispute which is not readily resolved, you have the right to request arbitration under supervision of the state or local bar associations for the jurisdictions in which we practice ....Any dispute regarding payment shall be submitted to arbitration.'"

[5] "On August 6, 2008, Gamma Group, Santa Fe, CSi Agency Services, Inc., Alpha Partners, Ltd., James D. Maxwell, and James T. Maxwell entered into an engagement agreement with Alan Rich for legal representation in Cause No. 3:07-CV-1985-B, Lincoln General Insurance Co. v. US Auto Insurance Services, Inc., et al. (the "Lincoln General I Lawsuit"), in the U.S. District Court, Northern District of Texas, Dallas Division."

limited. The paragraph refers specifically to 'fee disputes' and 'disputes regarding payment.'" CR 194.

At the hearing itself, the receiver *twice* admitted the existence of an agreement to arbitrate between Appellant and Santa Fe:

- "There are two Lincoln General lawsuits. There is a – *there is a arbitration agreement between Mr. Rich and Santa Fe*, what I refer to as Lincoln General I." (RR Vol. 2 at 35)

- Because we've got four – four sets of transfers, but only *an agreement to arbitrate on one of them*. (RR Vol. 2 at 42)

The complaint the receiver makes now, for the first time on appeal, that the legal services agreement was not "formally" introduced into "evidence" has been waived. To sum up the situation:

1.      The trial court's Order stated that it had the arbitration agreement before it and relied upon it in making its decision.

2.      The agreement and arbitration provision were discussed extensively at the hearing – without objection.

3.      The *receiver admitted* the agreement's existence and arbitration provisions, even at points reciting its terms, (a) in its written response to the motion to compel; (b) in the receiver's affidavit in support of its written response

to the motion to compel; (c) in the receiver's hearing brief; and (d) in the receiver's own representations to the court at the hearing.

Considering the foregoing, the receiver's complaint on appeal concerning the evidentiary propriety of legal agreement cannot now be considered. *See* Rule 103, TEX. R. EVID.; Rule 33.1(a), TEX. R. APP. PRO.; *see also Simi, Inc. v. HEB Grocery Co., L.L.P*, No. 01-11-00506-CV, 2012 WL 1143649, *3 (Tex. App. – Houston [1ˢᵗ Dist.], Apr. 5, 2012, pet. denied) (when party-opponent provides evidence to court, it waives any appellate challenge to that evidence); *Hillkee, Inc. v. Navarro Sav. Ass'n*, 632 S.W.2d 374, 374-75 (Tex. App. – Waco 1982, no writ) (documents attached to pleadings are proper evidence absent objection); *Robinson v. Ultramar Diamond Shamrock Corp.*, No. 01-02-0738-CV, 2003 WL 21101730, *2 (Tex. App. – Houston [1ˢᵗ Dist.], May 15, 2003, pet. denied) ("Robinson also complains, for the first time on appeal, that pleadings are not competent summary judgment evidence. This complaint is waived. *See* TEX. R. APP. P. 33.1.")

### B. *The Receiver's Suit Constitutes a Dispute over Fees*

Of course, "a court should not deny arbitration *unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue." *See Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (emphases by the Court). Put in terms particular to

this case, the issue is whether any part of the receiver's suit against the Appellant can plausibly be termed a dispute over fees paid to the Appellant by Santa Fe. The receiver understandably argues that this case is not a dispute about fees, but that just disregards the substance of the petition. The receiver's argument is based on the causes of action it asserts, while ignoring the underlying facts that it pleads. To be sure, there is no cause of action titled "Fee Dispute," yet that is immaterial. The receiver's petition reveals, unequivocally, that the factual basis for the case is that *Santa Fe paid attorney's fees to Appellant that the receiver alleges should not have been paid.* The primary remedy sought by the receiver is *the return of all of the fees paid by Santa Fe to the Appellant.* Other than actually having a cause of action titled "Return of Disputed Attorney's Fees," the situation really cannot be much clearer, especially given the applicable law, which presumes that an arbitration clause covers a claim unless it is clear that it does not.

**C.** ***When the underlying facts intertwine and there is an arbitrable cause of action, the entire case is subject to arbitration***

The receiver spends a great deal of time and effort attempting to convince this Court that, for a whole host of reasons, certain of the causes of action it brings cannot be arbitrated. Whether the claims "belong" to Santa Fe, whether they existed at the time of the legal services agreement, whether they are statutory or

-8-

sound in tort, whether the receiver is "special" and unlike ordinary litigants, and on and on. All of these arguments are, however, red herrings, given well-known arbitration law that the receiver simply ignored – a suit making allegations that fall under the terms of an arbitration clause is subject to arbitration, lock, stock and barrel.

A single example suffices to prove the point. In is beyond debate that at least one cause of action and the underlying facts alleged in relation thereto against Appellant could only be brought by a client (*i.e.* Santa Fe, now the receiver) against his or her lawyer, *i.e.* the "breach of fiduciary duty" claim seeking the fee forfeiture remedy. *Reagan Nat. Advertising of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, *2 (Tex. App. – Austin, July 29, 2008, no pet.); *Daniels v. Walters*, No. 03-03-00375-CV, 2004 WL 741672, *3 (Tex. App. – Austin, April 8, 2004, pet. denied). Since it is manifest that the factual underpinnings of the breach of fiduciary duty claims are closely intertwined with those underlying all of the causes of action, the entire case is subject to arbitration. *See, e.g., In re Sun Communications, Inc.*, 86 S.W.3d 313, 318 (Tex. App. – Austin 2002, no pet.); *Vireo\, P.L.L.C. v. Cates*, 953 S.W.2d 489, 494 (Tex. App. – Austin 1997, pet. denied), *citing Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 271

(Tex. 1992).[6]

**D.** ***The arbitration savings clause of the Insurance Code does not parse a receiver's capacity in bringing suit, but instead unambiguously provides that any and all arbitration clauses of an insolvent insurer are valid and enforceable against the receiver***

Closely related to the prior argument, the receiver argues that it is "special," and, unlike ordinary litigants, it cannot be forced to arbitrate claims simply because the insolvent insurer agreed to do so. In particular, the receiver asserts that the "capacity" in which it sues is somehow a critical distinction under the Insurance Code. This time the receiver ignores well-worn rules of statutory interpretation. The Insurance Code specifically provides, clearly and unambiguously, that the receiver is bound by arbitration provisions of the insurer: "Except as to claims against the estate, *nothing in this chapter deprives a party of any contractual right to pursue arbitration.*" Section 443.005(e), TEX. INS. CODE.

In the arbitration savings clause, the Legislature did not parse the receiver's capacity. This is of critical importance in interpreting the statute because the Legislature did precisely that – make distinctions based on capacity – in other

---

[6] It is thus not necessary to refute the actual litany of reasons certain causes of action are argued to be beyond the scope of the arbitration provision. Nevertheless, they are not beyond the scope, as argued in the Appellant's opening brief.

sections of the same chapter of the insurance code.[7]  Since the Legislature made the arbitration savings clause absolute when the receiver is suing, and because the Legislature *could have* formulated the savings clause in the manner the receiver wants, *but did not,*[8] this Court must give the savings clause its plain meaning.  That is to say, *any* contractual right to arbitration is preserved when the receiver sues, *period.  See, e.g., City of Houston v. Bates*, 406 S.W.3d 539, 544, 546 (Tex. 2013) (a statutory term (like "any" in this case) should be given its "plain meaning" unless that leads to absurd results, and it is presumed (as is the case here) that "the omission of a phrase contained within similar statutes had a purpose.")

The "capacity" in which the receiver claims it has sued is immaterial to whether an arbitration clause can be interposed against a receiver's suit.[9]

---

[7] *Compare* Sections 443.206(a), 443.154(m), 443.154(s), TEX. INS. CODE.

[8] *Viz.* "Except as to claims against the estate <u>where the receiver is acting in the capacity of a policyholder, creditor, member, or stockholder of the insurer,</u> nothing in this chapter deprives a party of any contractual right to pursue arbitration."

[9] Given that capacity is immaterial under the arbitration savings clause, it is not necessary to address the various *sui generis* bankruptcy code cases cited by the receiver.  Notably, none address the statute at issue in this case, and none were decided in the face of a provision of the same statute which says that capacity is immaterial when the question is whether the case must be arbitrated.

**E.** ***Under the "Eight-Corners" rule, the fees paid in the Home State and Transatlantic matters are not at issue in this case, and when a third-party attempts to assert rights arising out of a contract containing an arbitration clause, that third-party becomes bound to the arbitration clause***

The receiver argues that its petition makes allegations against the Appellant based on fees paid in two matters (*Home State* and *Transatlantic*) involving Gamma Group, Inc., a Santa Fe affiliate. For that reason, the receiver asserts that Santa Fe cannot be forced to arbitrate this case. This argument fails for two independent reasons.[10]  <u>First</u>, reading the four-corners of the petition leaves one completely in the dark as to how the case concerns the *Home State* or *Transatlantic* matters. The receiver cites to a single paragraph that mentions fees paid on behalf of Gamma Group, a paragraph that does not mention either the *Home State* or *Transatlantic* matter. It is quite unremarkable that Gamma Group is mentioned in the lawsuit and that paragraph, since Gamma Group was a defendant in the *Lincoln General* case represented by the Appellant. Indeed, the *Home State* and *Transatlantic* matters are referenced *no where* in the petition; yet *Lincoln General* appears on nearly every page.

---

[10]  Even were the receiver were correct, which it is not, that means only that a small part of the receiver's suit against the Appellant is not subject to arbitration.

Second, the receiver again ignores important arbitration law, failing to address *why it matters to the outcome* whether *Home State* or *Transatlantic* are at issue. If its petition is indeed read to encompass the *Home State* and *Transatlantic* matters, the receiver would be asserting rights that arise from the *Home State* and *Transatlantic* legal services agreements – agreements with arbitration clauses identical to the one in the Lincoln General agreement. The petition would have to be read as claiming that Appellant, by accepting payments from Santa Fe, somehow violated duties created by or related to the *Home State* and *Transatlantic* agreements and therefore Santa Fe is entitled to disgorgement of those fees too. The law, however, is to the contrary, and went undiscussed by the receiver. Since the receiver, a third-party to the *Home State* and *Transatlantic* agreements, seeks to benefit from those agreements, the receiver is also bound by the arbitration provisions in those agreements. *See, e.g., In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755-56 (Tex. 2001). Thus, it matters not whether *Home State* and *Transatlantic* are part of this case (although they are not), because arbitration is still mandated.

**F.** ***The legal services agreement clearly states that any matter related to the Lincoln General litigation was encompassed by the legal services agreement, and the re-filed Lincoln General case is definitively related to the initially filed, dismissed, then re-filed case***

The receiver differentiates between "Lincoln I" and "Lincoln II" and claims that there can be no arbitration involving "Lincoln II" (which constitutes the bulk of the fees which the receiver seeks to recover). It is quite remarkable that the receiver fails to address the fact that the Lincoln General legal services agreement clearly and unambiguously binds the parties with respect to the Lincoln General litigation in whatever form it may take as the representation progresses over time. Specifically, the agreement states that Rich's "representation of you in this matter is limited solely to the defense of the Lawsuit *and proceedings directly related thereto*, to the extent needed." (CR 140). While what the receiver calls "Lincoln II" was simply the re-filing of the original case as contemplated by the parties' Memorandum of Understanding after the failed settlement attempt, even were the so-called Lincoln I case and Lincoln II case not considered to be the "same" litigation, Lincoln II was, *at the very least,* a case "directly related" to the original *Lincoln General* suit.

As such, the receiver is bound by the arbitration provision to arbitrate any fee-related claims involved in the *Lincoln General* litigation, no matter the Roman

-14-

numeral that follows the title.[11]

## IV.

## Conclusion and Prayer

The trial court legally erred by refusing to compel the dispute between the receiver and Appellant to arbitration, as required by the arbitration provision of the written legal services agreement concerning the *Lincoln General* litigation. The receiver is bound by the agreement by virtue of the Insurance Code's arbitration savings clause, because it is asserting claims that only Santa Fe could assert as client, and the facts underlying the claims only a client may assert are inextricably intertwined with everything else alleged.

This lawsuit is also within the scope of the legal services agreement. It is simply impossible not to read the petition as concerning the payment by Santa Fe of attorney's fees to the Appellant. Further, the receiver's position concerning fees paid in the Home State and Transatlantic matters are not supported by any reasonable interpretation of the petition, and regardless, the receiver is asserting

---

[11] With respect to the receiver's arguments concerning the Federal Arbitration Act, and the associated issue of "reverse-preemption," the Appellant has nothing to add other than what is already argued in his opening brief. *See* Appellant's Opening Brief at 4 n.3, 16 n.6. In sum, it is not necessary to decide any of these issues since a decision under the Texas act is based on the exact same principals and will have precisely the same outcome.

rights under those agreements which subjects the receiver to those arbitration provisions.

It is immaterial whether the receiver claims to be suing on behalf of creditors and policyholders. The Insurance Code differentiates between capacities in which a receiver can act, whenever it is material. However, the arbitration savings clause of the Insurance Code makes no such distinctions. Instead, the code provides that any otherwise valid arbitration provisions are preserved, with no capacity-related limitations at all on that broad language.

This Court must, therefore, reverse the trial court order and render a judgment that requires the case below between the receiver and Rich be arbitrated. Rich also seeks all relief to which he is entitled.

Respectfully submitted,

/s/ Alan B. Rich
Alan B. Rich
State Bar No. 16842350
4244 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
214.744.5100
214.744.5101 [Fax]
arich@alanrichlaw.com

COUNSEL FOR THE APPELLANT

## Certificate of Compliance

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 14-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 3594 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

/s/ Alan B. Rich
Alan B. Rich

## Certificate of Service

The undersigned certifies that on September 15, 2015 a copy of this brief were served on the Attorneys for the Appellee through the court's electronic filing system as follows:  Fuller Law Group, Christopher Fuller, State Bar No. 07515500 4612 Ridge Oak Drive, Austin, Texas 78731, Telephone: (512) 470-9544 Email: cfuller@fullerlaw.org

/s/ Alan B. Rich
Alan B. Rich